# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUA MENDOZA, JR., | 1:08-cv-01617-OWW-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| KEN CLARK, Warden | |
| Respondent. | |
| _____/ | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY

Following a jury trial in the Tulare County Superior Court, Petitioner was convicted of three counts of attempted premeditated murder (Cal. Penal Code[1] §§ 664/187 [counts 1, 4, and 5]), two counts of shooting at an inhabited dwelling (§ 246 [counts 2 and 6]), and two counts of permitting another to shoot from a vehicle (§ 12034(b) [counts 3 and 7]).  Street gang allegations (§ 186.22(b)) and firearm enhancements (§ 12022.53(c), (d) & (e)(1)) were also found true.  On November 29, 2005, Petitioner was sentenced to an aggregate prison term of 59 years-to-life.

Petitioner filed a timely notice of appeal.  On May 9, 2007, the California Court of Appeal, Fifth Appellate District affirmed the judgment of conviction, but vacated the sentence and remanded to the trial court for resentencing.  (Lodged Doc. No. 1.)

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

1    Petitioner filed a petition for review in the California Supreme Court, which was denied

2    on July 25, 2007.  (Lodged Doc. Nos. 2-3.)

3    On remand, the trial court resentenced Petitioner on August 24, 2007, and an amended

4    abstract of judgment was filed on September 10, 2007.  (Lodged Doc. No. 4.)  Petitioner did not

5    appeal from the resentencing.

6    Petitioner filed the instant federal petition for writ of habeas corpus on October 24, 2008.

7    (Court Doc. 1.)  Respondent filed an answer to the petition on February 19, 2009.  (Court Doc.

8    13.)  Petitioner filed a traverse on August 12, 2009.  (Court Doc. 22.)

9                         STATEMENT OF FACTS[2]

10           [Petitioner] was the driver in two drive-by shootings that occurred on May
      22, 2004.  Julian Espitia fired a handgun out the passenger window at two houses.
11    A man was struck in the chest by a bullet, but he survived.  An occupant of one of
      the houses admitted that he had been a member of the Original Gangsters Surenos
12    (OGS), which is a Surenos subset.  Gang expert Joe Aguilar testified that
      [Petitioner] is a member of the Brown Pride Catella (BPC), which is a Nortenos
13    subset.  Nortenos and Surenos are rivals. [Petitioner] and six other BPC members
      had been injured in a drive-by shooting that occurred on February 28, 2004.
14    Detective Aguilar opined that the May 22, 2004, drive-by shooting was committed
      to enhance and benefit the BPC.  [Petitioner] denied knowingly participating in
15    the drive-by shootings.  He testified that he was simply giving friends a ride and
      Espitia unexpectedly fired a handgun out of the passenger window on two
16    occasions.

17    (Lodged Doc. No. 1, Opinion, at 2.)

18                              DISCUSSION

19    A.    Jurisdiction

20           Relief by way of a petition for writ of habeas corpus extends to a person in custody

21    pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

22    or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

23    529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

24    violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

25    out of the Tulare County Superior Court, which is located within the jurisdiction of this Court.

26

27

28        [2] The Court finds the Court of Appeal correctly summarized the facts in its May 9, 2007 opinion.  Thus, the
      Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

28 U.S.C. §§ 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable."  Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing

evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991).  However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C.    Conviction Based On Erroneous Legal Theory

Petitioner contends that the prosecutor and trial court erroneously advised the jury regarding the legal theory upon which he could be convicted in violation of the Fifth, Sixth, and Fourteenth Amendments.

1.    *State Court Review*

The California Court of Appeal thoroughly analyzed and rejected the claim as follows:

**A. Facts**

After the parties rested, the court instructed the jury on the relevant principles of law, including the applicable mental states for the charged offenses and enhancements. (CALJIC Nos. 8.66, 8.66.1, 8.67 [attempted murder]; CALJIC No. 9.03 [shooting at an inhabited dwelling]; CALJIC No. 9.04 [permitting shooting from vehicle]; CALJIC No. 17.19.5 [intentional and personal discharge of a firearm causing great bodily injury enhancement]; CALJIC No. 17.24 .2 [gang enhancement].) The court gave CALJIC Nos. 2.02 [sufficiency of circumstantial evidence to prove specific intent], 3.30 and 3.31 [concurrence of act and intent], and 3.32 [evidence of mental defect received for the purpose of determining whether appellant actually formed the required specific intent or premeditation].

During his initial closing argument, the prosecutor argued that appellant's testimony conflicted with his earlier statements to the police. In relevant part, she argued:

4

"The defendant lied [the night he was arrested]. The defendant himself admitted to you he lied....

"Also undisputed is that seven months later he gave a statement to Detective King.... And nine months after that, yesterday he tells you yet another story. And this is the story that he expects you, the jury, to now believe.

"Also, he expects you to believe because remember, he had details of everything that happened, how he was driving around the people he picked up. Of course, remember yesterday's version of who he picked up when who was [sic] in the car during the shootings. All of a sudden it was a complete turnaround from what he said nine months before that to Detective King.

"He also stated that conversations were had in that van, but for some reason he couldn't even tell you what the topics of the conversations were, let alone exactly what was talked about.

"Is that reasonable? Is that really reasonable to think that? When he remembers so much detail of everything else that happened, but all of a sudden he doesn't remember the conversations?

"In our law we are governed by a reasonable person's standard. What would a reasonable person do? And that's what you compare the defendant to.

"In this situation, a reasonable person after the first shooting, would say hey, you just shot from my car. Get out of my van."

The court interrupted the prosecutor's argument sua sponte and ordered a brief recess. During a conference with counsel, the court stated, "I don't think it is right to say what would a reasonable person do. This is a specific intent crime. I think we'll get into trouble when you say that, so modify that and clarify that." The prosecutor replied, "All I'm doing is comparing what a reasonable person would do with what the defendant did, to judge what his actions were. [¶] I'm going to get into specific intent in a moment." The court responded, "Now, what I'm suggesting is that you need to stay away from what a reasonable person would do to show some sort of criminal liability. It can become muddled and misconstrued and problematic." The prosecutor asked, "How do I compare what he would do to what anyone else would do? Is it allowed to say is it reasonable to assume?" The court answered, "Sure. [¶] But please clarify that." The prosecutor replied, "Yes. We'll leave it at what's reasonable. Not a problem." The court asked, "Anything else on that issue?" and defense counsel replied, "No."

The prosecutor resumed her closing argument, as follows:

"... What is reasonable in this case?

"It is reasonable that when someone shoots from your car you pull over and you tell them to get out. It is reasonable that after a second shooting occurs from your car, in that same trip you pull over at least at that point and tell them to get out. It is reasonable to get them out of your vehicle. [¶] It is also reasonable that when you finally do drop them off-"

Defense counsel objected and asked to approach the bench. During a sidebar conference, the court stated, "On the same issue, what's reasonable. This is a little bit difficult because you talk about what's governed by the reasonable

standard." The prosecutor replied, "That's why we are talking about reasonable doubt. I understand the reasonable-what's reasonable governs every single thing. It is reasonable doubt. We are trying to show what the defendant claims happened is not true, therefore, his claims do not count as a reasonable doubt." Defense counsel stated, "The Court made a comment earlier because we have a specific intent crime, the reasonable person standard does not apply." The court directed the prosecutor "to clarify that reasonable person standard, and say we are not really talking a reasonable person in these cases." The prosecutor replied, "Let me tell you where I'm going. I'm going to finish with what's reasonable, then I'm going to talk about what the defendant did. What the defendant did, that is not reasonable. Therefore, his claims do not make a reasonable doubt in this case." Defense counsel objected, "That's the problem with that whole issue. You pointed out specific intent. She's put before the jury already the statement a reasonable person, and then the Court stopped it or wanted it out, specific intent. You asked her to clarify that, and she continues to use the word reasonable. So the jurors [have] been given that word. It's still not clear." The court concluded the matter by stating that it was going to make a brief statement to the jury.

The court gave the jurors the following admonishment:

"... One of the things we're talking about here is statements by counsel. We are governed by a reasonable person standard. Generally that's used if you are in a civil case and you cause somebody harm and say what a reasonable person would do. And in no way is counsel trying to mislead you.

"But you have to understand what we are here for, the defendant must have had a criminal intent, either general criminal intent in allowing somebody to shoot out of his car, or specific intent to aid and abet a wrongdoer in the other counts.

"So, remember, we are talking about specific intent or general intent. The defendant must have an intent."

The prosecutor resumed her argument, as follows:

"... Just to finish that thought, the reason that this information is being given to you, which I'll just give to you in advance, is you are governed in the criminal law by what is a reasonable doubt. It is only if you have a doubt that's reasonable that you don't convict. We're talking about what's reasonable to do. We left off with defendant drops off the shooter and some of the other people that he now claims were in the car with him. He continues to drive home.

"What's reasonable? You go to the police if you just witnessed a crime like that. You go tell them what you know.

"What else is reasonable? That when you are finally even contacted by the police, that you then tell them what happened.

"What do we have the defendant doing in this case? What are his claims and are those claims reasonable?"

The prosecutor continued, arguing that appellant's conduct was unreasonable.

Immediately thereafter, the prosecutor turned to the issue of appellant's intent. She argued, "The  intent. We've been talking about crimes that require a specific intent. What shows the defendant's intent in this case? You have several

key pieces of information." Later, she argued:

"We're left in this case with the main issue of being intent. What did the defendant intend to do? We just talked about the different ways and the different things that point to the defendant's specific intent in these crimes.

"Ladies and gentlemen, if it walks like a duck, it talks like a duck, it looks like a duck, it is not a horse. Call it what it is. This defendant knew what was going on. He intended to help in what was going on. He had a motive and he continued to drive so that the shooter could commit these crimes, and that he, being the defendant, could help."

During the prosecutor's rebuttal, she argued that the evidence demonstrated that appellant formed the specific intent to participate in the drive-by shooting. She then argued:

"Now, there's an instruction that was read to you about the sufficiency of circumstantial evidence when you are trying to prove a specific intent. Don't forget one theory, it must be consistent with the theory that the defendant had the required specific intent, but two, don't forget this, it cannot be reconciled with any other rational conclusion. It has to be a reasonable interpretation. This is why it is important to consider what is reasonable in this case. This is what was discussed before.

"What is reasonable in these situations? The People submit to you that the claims the defendant made were not reasonable in light of the circumstances and in light of what the law requires. Because they are not reasonable. They can be totally discredited and not used by you if you so choose.

"You are [ ] also read an instruction about a mental defect. And this is to be used by you to determine if the defendant actually formed a specific intent to commit these crimes."

**B.   Neither the prosecutor nor the court misstated the law.**

Appellant argues that the prosecutor and the court both misstated the law, allowing the jury to convict him on an erroneous legal theory in violation of his fifth, sixth and fourteenth amendment rights. He contends that as a result of the prosecutor's impermissible argument and the court's erroneous clarifying admonishment the jury was permitted to apply a "reasonable person standard" to the charged offenses, rather than requiring it to find that the defendant possessed the required knowledge and intent for each of the offenses and enhancements. We are not convinced.

Appellant bears the burden of proving the existence of prejudicial prosecutorial misconduct. (*People v. Van Houten* (1980) 113 Cal.App.3d 280, 292.) "[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) The prosecutor's remarks must be considered in the context of the argument as a whole; words and phrases should not be singled out and analyzed without reference to the entirety of the prosecutor's argument. (*People v. Dennis* (1988) 17 Cal.4th 468, 522.) The court should not lightly infer that the jury drew the most damaging, rather than the least damaging, meaning from the prosecutor's statements. (*People v. Guerra*

(2006) 37 Cal.4th 1067, 1153.)

When the challenged remarks are properly considered in context, it is readily apparent that the prosecutor did not confuse or mislead the jury; it is not reasonably likely that the jury would have construed or applied the challenged remarks in such a way that they would disregard their instructions concerning the applicable intent and knowledge elements of the charged offenses and enhancements. The remarks challenged by appellant were part of an argument in which she contended that appellant's testimony was unreasonable and not credible. After she demonstrated the unreasonableness of appellant's defenses, she then discussed the intent requirements of the charged crimes. She set forth the evidence and argued that inferences drawn from such evidence proved appellant's knowledge and malicious intent. At no time did the prosecutor argue, either directly or inferentially, that the jurors should substitute a "reasonable person" standard in lieu of determining whether defendant acted with the required intent and knowledge.

We also reject appellant's contention that the court's clarifying admonishment actually confused and misled the jury. In assessing this claim, "we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 957.) Appellant improperly isolates one sentence to provide a skewed interpretation of the court's admonishment. When the challenged sentence is read in context, it is clear that the court did not direct the jury to apply a reasonable person standard. Rather, it explained that while the reasonable person standard generally is used in civil cases, in this matter the jury must determine whether appellant committed the prohibited acts with the required intent. It is not reasonably likely that the jury applied the court's clarifying admonishment in an impermissible manner.

Appellant's comparison of the prosecutor's remarks in this instance to those at issue in *People v. Najera* (2006) 138 Cal.App.4th 212 (*Najera* ) is not convincing. There, the prosecutor incorrectly informed the jury on two occasions that a determination of heat of passion should be based on the defendant's conduct in response to the provocation rather than whether the provocation itself was such that it would cause an ordinary person of average disposition to act rashly. The Court of Appeal explained, "How the killer responded to the provocation and the reasonableness of the response is not relevant to sudden quarrel or heat of passion." (*Id.* at p. 223.) In contrast here, the prosecutor did not incorrectly explain a principle of law. Rather, she urged the jury to reject defendant's testimony because it was unreasonable and, therefore, not credible. The prosecutor's subsequent discussion of the applicable intent and knowledge elements of the charged offenses and enhancements was legally correct. Thus, the comparison fails.[3]

Accordingly, we conclude that neither the prosecutor nor the court

---

[3] In any event, the judgment in *Najera* was affirmed because the court cured the prosecutor's error by responding to a question by the jury on this point and directing them to the instruction correctly setting forth the applicable legal principle. (*Najera, supra,* 138 Cal.App.4th at pp. 224, 229.) Similarly here, the court correctly explained to the jury that the reasonable person standard is generally applicable in civil cases and that, in this instance, the jury must determine whether appellant possessed the requisite intent before convicting him of the charged offenses.

misstated the law and the jury was not permitted to convict appellant on an erroneous legal theory. Neither the prosecutor nor the court created conflicting or inadequate instructions relating to intent that removed the elements of intent and knowledge from the jury's consideration.

(Lodged Doc. No. 1, Opinion, at 3-10; footnote in original.)

    2.    *Review Of Claim*

    To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991). Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (*citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

    In addition, a habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (*quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (*quoting* United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Under this standard, a

1    petitioner must show that there is a reasonable probability that the error complained of affected

2    the outcome of the trial - i.e., that absent the alleged impropriety, the verdict probably would

3    have been different.

4            As fully explained by the California Court of Appeal, considering the prosecutor's

5    comments and the trial court's clarifying instruction in context, there was no misstatement of the

6    applicable standard under California law.[4]   As noted, "[at no time did the prosecutor argue, either

7    directly or inferentially, that the jurors should substitute a 'reasonable person' standard in lieu of

8    determining whether defendant acted with the required intent and knowledge." (Lodged Doc.

9    No. 1, Opinion, at 8.)  The prosecutor's comments viewed in the context of the overall argument

10   merely conveyed to the jury that Petitioner's actions, as presented to them, were not reasonable.

11   Considering the evidence presented at trial, such argument was certainly legitimate.  Petitioner

12   admitted his association with the criminal street gang Brown Pride Catella, and admitted that he

13   knew the occupants of the vehicle in which he was driving were members of that gang.  (RT 368-

14   371.)  There was evidence that the shooting was in retaliation for a drive-by shooting a few

15   months before that injured Petitioner and other gang members.  (RT 223-229, 267-274.)  One of

16   the witnesses-an occupant in one of the houses shot at, admitted he was a member of a rival

17   gang.  (RT 110-111.)  Petitioner's claim that he was merely giving two friends a ride and one of

18   them unexpectedly fired a handgun out of the window on two occasions was arguably (and

19   reasonably so) incredible.  In light of this evidence, nothing about the prosecutor's argument "so

20   infected the trial with unfairness as to make the resulting conviction a denial of due process."

21   Darden v. Wainwright, 477 U.S. at 171.

22           Moreover, any potential confusion that may have arose from the prosecutor's comments

23   was rectified by the trial court's subsequent advisement.  Contrary to Petitioner's claim in his

24   traverse, the court addressed any potential confusion regarding the "reasonable person" standard

25   and clarified that was not the applicable standard in this case.  Rather, the jury was required to

26

27           [4] Petitioner's claim that the prosecutor violated state law is not cognizable in this forum.  [The availability
of a claim under state law does not of itself establish that a claim was available under the United States
28   Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), quoting, Dagger v. Adams, 489 U.S. 401, 409 (1989).

1   find that Petitioner posed the requisite criminal intent.  (RT 435.)  Therefore, the state courts'

2   determination of this issue was not contrary to, or an unreasonable application of, clearly

3   established Supreme Court precedent, nor an unreasonable determination of the facts in light of

4   the evidence presented.  28 U.S.C. §§ 2254(d)(1), (2).

5   D.   <u>Sentencing Errors</u>

6          Petitioner raises the same sentencing errors that he raised on direct appeal to the state

7   courts.  The California Court of Appeal analyzed the claims and agreed with Petitioner, and

8   vacated the sentence and remanded for resentencing stating:

9              [Petitioner] was sentenced on count 1 to seven years to life plus a
       consecutive term of 25 years to life plus a consecutive term of 10 years that [was]
10     stayed pursuant to section 654.  He was sentenced on count 2 to 15 years to life
       concurrent with count 1.  He was sentenced on count 4 to seven years to life
11     consecutive to count 1 plus 20 years consecutive to count 1 plus 10 years stayed
       pursuant to section 654.  He was sentenced on count 5 to seven years to life
12     concurrent to count 4 plus 20 years concurrent to count 4 plus 10 years stayed
       pursuant to section 654.  He was sentenced to count 6 to 15 years to life
13     concurrent to count 4 plus five years to life stayed pursuant to section654.  No
       terms were set for counts 3 and 7; the court set forth the sentencing range for these
14     terms and then stated, "That's stayed pursuant to [section] 654."

15             [Petitioner] contends that he was improperly sentenced.  Respondent
       concedes the sentencing errors and we accept this concession as properly made.
16     First [Petitioner] did not personally use or discharge a firearm in the commission
       of the attempted murders.  Therefore, a criminal street gang enhancement should
17     not have been imposed in addition to the firearm discharge enhancements for
       counts 1, 4, and 5.  *People v. Salas*, 89 Cal.App.4th 1275, 1281-1282 (2001).
18     Second, the court erred in failing to specify the terms imposed on counts 3 and 7.
       The correct procedure is to impose a sentence for the count and then to stay its
19     execution pursuant to section 654.  *People v. Thompson*, 209 Cal.App.3d 1075,
       1079 (1989).  Finally, the proper sentence on count 1 is 25 years to life.  § 664(a);
20     *cf. People v. Jefferson*, 21 Cal.4th 86, 90, 99-102 (1999).

21  (Lodged Doc. No. 1, Opinion, at 10-11.)

22         The sentence was vacated and the matter was remanded for resentencing.  (<u>Id</u>.)  Pursuant

23  to the appellate court's decision, the trial court resentenced Petitioner on August 24, 2007, and an

24  amended abstract of judgment was filed on September 10, 2007.  (Lodged Doc. No. 4.)

25  Petitioner did not appeal after resentencing.  Notwithstanding the fact that the instant claim is not

26  exhausted (28 U.S.C. § 2254(b)(1)(A)), there is no controversy to resolve here.  Petitioner

27  received any relief available from the state court and no further relief is available from this Court.

28                                  <u>RECOMMENDATION</u>

1    Based on the foregoing, it is HEREBY RECOMMENDED that:

2    1.      The instant petition for writ of habeas corpus be DENIED; and,

3    2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

4    This Findings and Recommendation is submitted to the assigned United States District

5  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

6  the Local Rules of Practice for the United States District Court, Eastern District of California.

7  Within thirty (30) days after being served with a copy, any party may file written objections with

8  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

9  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

10 and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

11 objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

12 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

13 may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

14 Cir. 1991).

15

16    IT IS SO ORDERED.

17    **Dated:   August 19, 2009**          **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE
18